IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:

QUASAR MANAGEMENT SERVICES, LLC,

    Plaintiff,

v.

HARTFORD FIRE INSURANCE COMPANY,

    Defendant.

---

## COMPLAINT AND JURY DEMAND

---

**COMES NOW** QUASAR MANAGEMENT SERVICES, LLC, by and through its undersigned counsel, and hereby submit this its Complaint against Defendant, HARTFORD FIRE INSURANCE COMPANY, and in support of its Complaint, allege and aver as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking economic and non-economic damages arising from Defendant's bad faith conduct, unreasonable delay, and unreasonable denial in the payment of covered benefits due and owing under Plaintiff's first-party insurance contract.

### PARTIES

2. Quasar Management Services, LLC ("Plaintiff" or "Quasar Management Services") is a Colorado Limited Liability Company with its principal office in Denver, Colorado.

3. Quasar Management Services, LLC, has one member, William C. Kephart, who is a natural person domiciled in Colorado Springs, Colorado.

4. Defendant, Hartford Fire Insurance Company ("Defendant" or "Hartford"), is a foreign insurance company incorporated and domiciled in the state of Connecticut and maintains its principal place of business in a state other than in Colorado.

## JURISDICTION AND VENUE

5. This Court has jurisdiction and venue is proper pursuant to 28 U.S.C. §§ 1332(a) and 1441. There is complete diversity among the parties and the amount in controversy is in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs. The property which is the subject of the claim and the adjustment of the claim occurred in Colorado.

## FACTS COMMON TO ALL COUNTS

6. Quasar Management Services is the owner of property that is located at 2275 & 2283 Waynoka Road, Colorado Springs, Colorado 80915 (the "Waynoka Property").

7. Quasar Management Services purchased a Commercial Policy of insurance from Hartford under Policy Number 34UUNVT7760 (the "Policy").

8. The Policy was issued with effective dates of January 1, 2016 through January 1, 2017.

9. The Policy is an all risk policy of insurance.

10. The Policy is a replacement cost value policy and covers loss to the Waynoka Property.

11. The Policy provides coverage for direct physical loss or damage to covered property at the premises caused by or resulting from any covered cause of loss.

12.     The Policy does not require that the Waynoka Property sustain functional damage for coverage to be afforded to direct physical loss or damage to covered property at the premises caused by or resulting from any covered cause of loss.

13.     The Policy does not include a cosmetic exclusion.

14.     Under the Policy, Hartford agreed to adjust all losses with Quasar Management Services fairly and timely.

15.     Quasar Management Services paid the premiums due under the Policy in a timely manner.

16.     Quasar Management Services performed all duties and responsibilities required of it under the Policy.

17.     On or about July 28, 2016, during the Policy period, the Waynoka Property suffered direct physical loss and/or damage resulting from hail and/or wind.

18.     The direct physical loss and/or damage resulting from the hail and/or wind constituted a covered loss under the Policy.

19.     The direct physical loss and/or damage resulting from the hail and/or wind resulted in functional damage to the Waynoka Property.

20.     The direct physical loss and/or damage resulting from the hail and/or wind diminished the service life of the roofing system covering the Waynoka Property.

21.     The direct physical loss and/or damage resulting from the hail and/or wind was timely reported to Hartford.

22.     Hartford assigned Claim Number CP0016981861 (the "Claim") to the Waynoka Property loss.

23. Hartford assigned its adjuster, Chris Joseph, to investigate and adjust Quasar Management Services' Claim for direct physical loss and/or damage to the Waynoka Property resulting from the hail and/or wind storm occurring on or about July 28, 2016.

24. Despite significant covered damages to the Waynoka Property resulting from the hail and/or wind storm occurring on or about July 28, 2016, Hartford denied Quasar Management Services' Claim for covered benefits.

25. Despite Hartford's denial, Quasar Management Services continued to pursue benefits owed under the Policy for the loss suffered at the Waynoka Property.

26. Quasar Management Services retained Roof Worx, a Colorado commercial roofing contractor, to inspect the direct physical loss and damage suffered to the Waynoka Property resulting from the hail and/or wind storm occurring on or about July 28, 2016.

27. Quasar Management Services requested Hartford reopen its investigation of the Claim.

28. Recognizing its mistake in denying the Claim, Hartford reopened its investigation.

29. Recognizing its mistake in denying the Claim, Hartford retained Cogdill Consulting, LLC ("Cogdill"), to inspect the loss to the Waynoka Property.

30. On or about April 4, 2017, nearly nine (9) months after the date of loss, Hartford sent its representative, Cogdill, to perform a reinspection of the Waynoka Property.

31. On or about April 4, 2017, Cogdill completed estimates of repairs for the Waynoka Property which outlined $334,558.88 in covered damages related to the 2275 Waynoka Road address and $269,857.76 in covered damages related to the 2283 Waynoka Road address of the Waynoka Property ("Cogdill First Damage Estimate"). A copy of Cogdill's First Damage Estimate is attached hereto as **Exhibit "A."**

32.     Cogdill's First Damage Estimates included $604,416.64 in covered damages not identified by Hartford during its initial inspection of the Waynoka Property.

33.     Hartford's failure to provide for $604,416.64 in covered damages during its initial inspection of the Waynoka Property that were subsequently identified nine months later in Cogdill's First Damage Estimates resulted in the delay of payment of $604,416.64 in covered benefits without a reasonable basis.

34.     On or about May 26, 2017, Plaintiff's contractor, Roof Worx, provided Hartford with an estimate outlining $409,988.48 in covered damages related to the 2275 Waynoka Road address and $338,839.03 in covered damages related to the 2283 Waynoka Road Address ("Roof Worx First Damage Estimate"). A copy of Roof Worx' First Damage Estimate is attached hereto as **Exhibit "B."**

35.     On or about June 8, 2017, Plaintiff's contractor, Roof Worx, generated an updated estimate for repair of covered damages to the Waynoka Property resulting from the hail and/or wind storm occurring on or about June 28, 2016 ("Roof Worx Second Damage Estimate").

36.     Roof Worx Second Damage Estimate outlined $423,509.54 in covered damages related to the 2275 Waynoka Road address and $347,006.12 in covered damages related to the 2283 Waynoka Road address. A copy of Roof Worx' Second Damage Estimate is attached hereto as **Exhibit "C."**

37.     On or about October 30, 2017, Hartford's representative, Cogdill, completed its second set of estimates for repair of covered damages to the Waynoka Property resulting from the hail and/or wind storm occurring on or about June 28, 2016 ("Cogdill Second Damage Estimate").

38.     Cogdill's Second Damage Estimate outlined $500,982.75 in covered damages related to the 2275 Waynoka Road address and $390,796.55 in covered damages related to the

2283 Waynoka Road Address. A copy of Cogdill's Second Damage Estimate is attached hereto as **Exhibit "D."**

39. Cogdill's Second Damage Estimate included an additional $287,362.66 in covered damages not included within Cogdill's First Damage Estimates.

40. Failure to discover the additional $287,362.66 in covered damages within Hartford's previous inspection of the Waynoka Property that were subsequently identified in Cogdill's Second Damage Estimates resulted in the delay and denial of payment of $287,362.66 in covered benefits without a reasonable basis.

41. It is apparent from Hartford's conduct that it adopted a plan or approach to delay, as much as possible, it's handling and payment of Quasar Management Services' Claim.

42. Quasar Management Services has fulfilled all duties required of it under the Policy after discovery of the loss.

43. Quasar Management Services has performed all conditions precedent and subsequent required under the insurance Policy, or alternatively, it has been excused from performance by the acts, representations, and/or conduct of Hartford.

**FIRST CLAIM FOR RELIEF**
**(Bad Faith Breach of Insurance Contract)**

44. Quasar Management Services realleges and reaffirms Paragraphs 1-43 as if fully set forth herein.

45. Under the Policy and Colorado law, Hartford owes Quasar Management Services the duty of good faith and fair dealing.

46. Under the Policy and Colorado law, Hartford had a duty to act with ordinary, reasonable diligence in investigating the claims submitted by Quasar Management Services and in

determining the amounts due and owing under the Policy in question, and to pay all amounts due and owing.

47. Hartford had an obligation to conduct a thorough, fair, unbiased, and timely investigation of the Claim presented to it, and then properly evaluate and timely pay those claims thereunder.

48. An insurer breaches its duty of good faith and fair dealing when it engages in unfair claim settlement practices.

49. Hartford sold Quasar Management Services the Policy at issue, the intent of which was to provide coverage for loss or damage to covered property at the premises caused by or resulting from any covered cause of loss.

50. Hartford knew that Quasar Management Services purchased the Policy to protect the Waynoka Property in the event of a loss.

51. Hartford owed Quasar Management Services the non-delegable duty to investigate its claim objectively and not look for ways to deny benefits or attempt to not pay the full amount owed.

52. Hartford knew that Quasar Management Services purchased the Policy to protect the Waynoka Property in the event of a loss.

53. Quasar Management Services has cooperated with Hartford in the processing of its claim for covered benefits resulting from a hail and/or wind storm occurring on or about July 28, 2016.

54. Quasar Management Services has cooperated with Hartford in the investigation of its claim for covered benefits resulting from a hail and/or wind storm occurring on or about July 28, 2016.

55. Quasar Management Services has not erected any obstacles to Hartford' ability to investigate its Claim for covered benefits resulting from a hail and/or wind storm occurring on or about July 28, 2016.

56. Quasar Management Services has not erected any obstacles to Hartford' ability to evaluate its Claim for covered benefits resulting from a hail and/or wind storm occurring on or about July 28, 2016.

57. Hartford disregarded the validity of Quasar Management Services' Claim for direct physical loss and damage resulting from the hail and/or wind storm occurring on or about July 28, 2016.

58. Hartford failed to treat Quasar Management Services' interests with equal regard to its own.

59. Hartford mischaracterized the evidence to the benefit of itself.

60. Hartford failed to be open and honest in its dealings with Quasar Management Services.

61. Hartford failed to conduct a full, fair, and prompt investigation of the Claim.

62. Hartford denied Quasar Management Services' Claim without conducting a thorough investigation in an attempt to effectuate a deceptively low settlement.

63. Hartford denied Quasar Management Services' Claim by failing to objectively evaluate the Claim based on all available evidence, and not just evidence which Hartford believes supports its position.

64. Hartford decision to underpay the benefits owed to Quasar Management Services was intentional and not accidental.

65. Hartford failed to assist Quasar Management Services with the presentation of its claim.

66. Hartford breached its duty to act reasonably and in good faith by, inter alia,

    (a) Conducting an outcome-oriented investigation of Quasar Management Services' loss
    (b) Denying Quasar Management Services' Claim without having documented a reasonable investigation based upon all information
    (c) Overlooking obvious covered damages during its inspection of the Waynoka Property in an effort to effectuate a deceptively low settlement

67. Hartford failed to conduct a thorough and timely investigation of Quasar Management Services' Claim in accordance with insurance industry claims handling standards and practices. This is demonstrated by Hartford's eventual payment of $891,779.30 in covered damages that were initially denied.

68. Among other circumstances, Hartford has committed unfair settlement practices including, without limitation:

    (a) Hartford has failed to acknowledge and act reasonably promptly upon communication with respect to claims arising under insurance policies;
    (b) Hartford has failed to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;
    (c) Hartford refuses to pay claims without conducting a reasonable investigation based upon all available information;
    (d) Hartford has failed to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear;
    (e) Hartford has compelled Quasar Management Services to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions by such insureds;
    (f) Hartford has failed to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage;
    (g) Hartford has misrepresented terms and conditions of the Policy in an attempt to influence its Insured to settlement for less than all benefits reasonably afforded under the Policy for the subject loss and damage; and

      (h)      Hartford encourages its claims representatives to engage in unfair claims settlement practices against its Insured, thereby violating applicable laws and regulations of the State of Colorado.

69. Hartford' claims representatives, including Chris Joseph, received incentive-based compensation to close quickly or reduce claim payments.

70. Hartford representatives, including Chris Joseph, received income-based compensation to reduce claims payments made to Quasar Management Services on its claim for loss or damage to covered property at the Property caused by or resulting from any covered cause of loss.

71. Hartford improperly denied Quasar Management Services' Claim by providing financial incentives to its personnel, including Chris Joseph, to determine claims handling.

72. Hartford improperly set various claims handling goals to reduce the amount paid on claims.

73. Hartford improperly denied Quasar Management Services' Claim to reduce overall claims payments.

74. Hartford improperly denied Quasar Management Services' Claim to increase profits.

75. Hartford improperly denied Quasar Management Services' Claim to maintain its loss ratio.

76. Hartford improperly denied Quasar Management Services' Claim to meet department goals.

77. Hartford' conduct demonstrates that it was repeatedly aimed at benefiting itself to the detriment of Quasar Management Services.

78. Hartford improperly denied Quasar Management Services' Claim by motivating its claims department to pay less on claims that are otherwise owed.

79. Hartford improperly denied Quasar Management Services' Claim to reduce the average amount paid on overall claims.

80. Hartford has committed unfair claim settlement practices as alleged in the preceding paragraphs of Quasar Management Services' Complaint.

81. Hartford' conduct constitutes a bad faith breach of the insurance contract.

82. Hartford has committed such actions with such frequency as to indicate a general business practice.

83. As a direct and proximate result of Hartford' actions, Quasar Management Services has:

    (a) incurred increased costs to repair, restore and/or replace the significant property damage;
    (b) suffered damages as a proximate result of the misconduct alleged; and suffered and will continue to suffer other expenses, including loss of pre-judgment interest, attorneys' fees, public adjuster costs and fees, investigatory fees, and other losses.

**WHEREFORE**, Plaintiff, Quasar Management Services, LLC, respectfully requests this Court enter judgment against Defendant, Hartford Fire Insurance Company, for damages resulting from its breach of its duty of good faith and fair dealing, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and such other relief as the Court deems appropriate.

**SECOND CLAIM FOR RELIEF**
**(Unreasonable Delay and Denial of Payment of Covered Benefits**
**Pursuant to C.R.S. §§ 10-3-1115 and 10-3-1116)**

84. Quasar Management Services re-alleges and reaffirms Paragraphs 1-83 as though fully set forth herein.

85. Under Colorado Revised Statute § 10-3-1115, an insurer who delays or denies payment to an insured without a reasonable basis for its delay or denial is in breach of the duty of good faith and fair dealing.

86. Under Colorado Revised Statute § 10-3-1115, an insurer's delay or denial is unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.

87. Quasar Management Services is a first-party claimant within the meaning of Colorado Revised Statute § 10-3-1115(1)(b)(1).

88. Quasar Management Services suffered a loss covered by the Policy and submitted a claim for that loss to Hartford.

89. The claimed loss and damage submitted by Quasar Management Services was covered by the Policy and Quasar Management Services was owed covered benefits under the Policy.

90. The claimed loss occurred during the period of time covered by the Policy.

91. Hartford denied payment of covered benefits without a reasonable basis for its actions.

92. Hartford's subsequently change in position from denial to approval of covered benefits demonstrates a de facto admission that it unreasonably denied covered benefits owed to Quasar Management Services.

93. Hartford delayed payment of covered benefits without a reasonable basis for its actions.

94. Hartford has unreasonably delayed and denied covered benefits without a reasonable basis for doing so as alleged in the preceding paragraphs of Quasar Management Services' Complaint.

95. Hartford delayed and denied payment of covered benefits without a reasonable basis for its action by failing to properly investigate its insured's loss.

96. Hartford delayed and denied payment of covered benefits without a reasonable basis for its action by providing a damage estimate without having documented a reasonable investigation based upon all information.

97. Hartford delayed and denied payment of covered benefits without a reasonable basis for its action by providing a damage estimate which did not include all covered damages.

98. Hartford delayed and denied payment of covered benefits without a reasonable basis for its action by ignoring objective evidence of direct physical loss and damage to the Property.

99. Hartford delayed and denied payment of covered benefits without a reasonable basis for its action demonstrated by its eventual payment of $891,779.30 in covered benefits.

100. Despite receipt of comprehensive estimates from Cogdill, Hartford delayed and denied payment of covered benefits without a reasonable basis for doing so.

101. Hartford unreasonably delayed and denied Quasar Management Services' claim to reduce overall claims payments.

102. Hartford unreasonably delayed and denied Quasar Management Services' claim to increase profits.

103. Hartford unreasonably delayed and denied Quasar Management Services' claim to maintain its loss ratio.

104. Hartford unreasonably delayed and denied Quasar Management Services' claim to meet department goals.

105. Hartford unreasonably delayed and denied Quasar Management Services' claim by providing financial incentives to its personnel, including Chris Joseph, to determine claims handling.

106. Hartford unreasonably delayed and denied Quasar Management Services' claim by motivating its claims department to pay less on claims, such as Quasar Management Services' claim for damages, than what is otherwise owed.

107. Hartford unreasonably delayed and denied Quasar Management Services' claim to reduce the average amount paid on overall claims.

108. Hartford unreasonably delayed and denied Quasar Management Services' claim by asserting coverage positions that it knew were without merit.

109. Hartford delayed and denied payment of $891,779.30 in covered benefits without a reasonable basis for its action as evidenced by the estimates for damages presented to Hartford subsequent to Hartford's denial of Quasar Management Services' Claim.

110. The actions of Hartford were intended to dissuade Quasar Management Services in pursuing benefits due and owing under the terms of the Policy.

111. Based upon the foregoing Paragraphs is therefore entitled to two times the covered benefit, attorneys' fees, and costs pursuant to C.R.S. § 10-3-1116, together with pre-judgment interest at the highest rate allowed by law.

**WHEREFORE**, Plaintiff, Quasar Management Services, LLC, respectfully requests this Court enter judgment against Defendant, Hartford Fire Insurance Company, for damages

authorized pursuant to Colorado Revised Statute § 10-3-1116, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and other such relief as the Court deems appropriate.

## REQUEST FOR JURY TRIAL

112. Quasar Management Services requests trial by jury with respect to all claims and issues triable to a jury.

Respectfully submitted this 26th day of July, 2018

/s/ Jonathan E. Bukowski
Larry E. Bache, Jr., Esq.
Colorado Bar No.: 51958
Jonathan E. Bukowski, Esq.
Colorado Bar No.: 45614
Timothy G. Burchard, II
Colorado Bar No.: 48635
Merlin Law Group, PA
1001 17th Street, Ste. 1150
Denver, CO 80202
Telephone:  720-665-9680
Facsimile:   720-665-9681
E-Mail: lbache@merlinlawgroup.com
E-Mail: jbukowski@merlinlawgroup.com
E-Mail: tburchard@merlinlawgroup.com